*Decisions will be entered under Rule 50.*

ESTATE OF FRANK MILLER GOULD, DECEASED, PAUL J. LONGUA AND BANK OF NEW YORK AND FIFTH AVENUE BANK, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22623. Promulgated March 16, 1950.

---

*Eugene D. Wadsworth, Esq.*, for the petitioners.
*Rigmor O. Carlsen, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The Commissioner determined a deficiency of $2,436 in gift tax for 1943. The only issue for decision is whether the value of a gift made by the decedent in 1943 was $58,000, as returned, or was $63,800, as determined by the Commissioner in arriving at the deficiency. The facts have been stipulated.

Frank Miller Gould died in 1945 and his estate is represented by his executors.

The decedent purchased a diamond ring on September 29, 1943, from a retail jeweler in New York City. The purchase was an arm's length transaction.

The retail price of the ring was $58,000 and the Federal excise tax imposed pursuant to section 2400 of the Internal Revenue Code was $5,800, a total of $63,800. The decedent paid $63,800 to the jeweler for the ring on September 29, 1943. The jeweler mailed the ring to the decedent, who was then in Georgia and, accordingly, no New York City sales tax was due or payable on the sale.

The decedent presented the ring to his wife in Georgia about one week after it was purchased.

A gift tax return for the calendar year 1943 was filed on behalf of the decedent with the collector of internal revenue for the second district of New York, and the transfer of the ring was reported as the only gift during that year. The value of the ring at the date of the gift was shown on the return as $58,000.

The Commissioner, in determining the deficiency, held that the fair market value of the ring at the time of the gift was $63,800.

The Commissioner argues that the value of the ring for gift tax purposes is the cost of the ring, including the Federal excise tax paid thereon at the time of the purchase, which purchase was just prior to the gift. The petitioner contends, on the other hand, that the Federal excise tax should not be included in determining the value of the ring for gift tax purposes. They both agree that there are no cases directly in point.

Section 1000 imposes a tax upon the transfer of property by gift, and section 1005 provides that "if the gift is made in property, the value thereof at the date of the gift shall be considered the amount

of the gift." The question for decision in this case is, What was the value of the ring at the date of the gift?

Section 86.19 (a) of Regulations 108 provides:

\* \* \* The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell.

The only evidence of value submitted in the record is the circumstances of the arm's length sale and purchase which took place about one week prior to the date of the gift. Generally, such a sale is regarded as the best evidence of the value of the article involved, i. e., the amount of money which changed hands in the sale and purchase is regarded as the value of the article. Here the amount of money paid by the purchaser to the seller was $63,800. The Commissioner used that amount as the value of the gift and his determination is presumed to be correct.

The petitioner argues that the seller was able to keep only $58,000 for himself out of the total of $63,800 paid by the decedent, since the seller had to turn over the difference of $5,800 to the collector of internal revenue. The petitioner might go further and point out that the seller could not retain all of the $58,000 for himself. There were other items, like this excise tax, which he would pay and which he could deduct in computing his profit. There might have been a commission on the sale and a customs duty on the ring. He undoubtedly had overhead and other expenses, including, perhaps, other taxes, yet it is not suggested that any of those items should be deducted in determining the value of the ring for gift tax purposes. The purchase prices of many articles nowadays include taxes which the man on the street, if he thinks of them at all, regards as part of the cost or purchase price of the article. For example, over one-half of the current price of cigarettes is charged because of taxes which the seller must pay. Yet, if one friend gives another a carton of cigarettes, both probably would regard the gift as having a value equal to the cost of the cigarettes, including whatever taxes were involved. They probably would not even know the price exclusive of tax. Thus, although the entire deficiency represents the gift tax on that portion of the total value represented by the excise tax, it is likewise probably true that a part of the total tax represents a tax upon other amounts which the seller can not retain for himself and which add no inherent value to the ring itself. In short, the net amount which the seller can retain for his very own does not necessarily establish the value here in question.

The petitioner argues that "the price" of the ring as ordinarily understood was $58,000. He quotes in this connection from section 2400, which imposed a tax equivalent to 10 per cent of the price upon "articles sold at retail," and section 2403 (c), which provided that,

for the purpose of determining the 10 per cent, the price should not include the tax. The necessity for some such provision is to produce a tax short of infinity. However, that provision does not limit the value of the article for gift tax purposes to the price upon which the excise tax was computed. Value was not the basis of the excise tax, as it is of the gift tax. The petitioner further says that the price of listed securities quoted on the exchange, which does not specifically include or directly reflect commissions and taxes on the sales, is taken as the value of such securities for gift tax purposes. While there may be some analogy in that situation, nevertheless, the amount paid by a purchaser to the seller of securities is not reduced by taxes or commissions, which the seller might have to pay, in order to arrive at the fair market value of the securities for gift taxes in case the purchaser immediately gives them away. Here the petitioner is arguing that the total amount which the decedent paid to the seller should be reduced by a tax then paid by the seller.

The petitioner also contends that, since an individual or an estate having for sale a ring such as this one would not have to pay any excise tax, such persons would sell the ring for $58,000. The Commissioner, on the other hand, suggests that the very existence of the excise tax on all new rings, i. e., those sold by dealers, would tend to increase the price at which the individual or the estate would be willing to sell a similar ring second-hand. It might be that such a seller would be able to obtain a price somewhere between $58,000 and $63,800 because of the fact that a retail dealer selling a like ring would have to include the excise tax in his price. Yet a dealer intending to resell the ring at a profit could not afford to pay as much as $58,000 for it. However, there is no evidence in the record on these subjects and the Court can not supply it or surmise what the price would have been if the ring had changed hands in such transactions or what price the decedent might have obtained for it.

If the decedent had given his wife the money to buy this ring, $63,800 is the amount which he would have given her. The amount of the gift in that case clearly would have been $63,800. Instead, he purchased the ring for $63,800 and gave her the ring. In each case he would part with $63,800, the wife would obtain the ring, and the value of the gift would seem to be the same.

Perhaps the closest analogy suggested by the parties comes from cases like *Guggenheim* v. *Rasquin*, 312 U. S. 254, where the Supreme Court held that the value of insurance policies given away by the taxpayer was the amount which she had paid in order to acquire them shortly before the gift rather than their cash surrender value in the hands of the donees immediately after the gifts. It could

have been argued there that the value of the policies should not include the loading charges, commissions, and other items which the insurance company had to include in the amount which it charged the insured but which do not increase the reserves, the point being that those charges added nothing to the real value of the insurance. The Court said at pages 257, 258:

> Presumptively the value of these policies at the date of the gift was the amount which the insured had expended to acquire them. Cost is cogent evidence of value. And here it is the only suggested criterion which reflects the value to the owner  *  *  *.

This record does not justify disturbing the Commissioner's determination.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

DISNEY, *J.*, dissenting: I agree with what Judge Johnson says in his dissent, but in addition it seems to me that the reference in the majority opinion to commission on sales, overhead, and other expenses and customs duties as offering parallel to the 10 per cent Federal excise tax here involved, is not sound. Commissions, "overhead and other expenses," and customs duties incurred by the seller prior to the sale would, of course, enter into the cost to him and, therefore, into the value of the ring at the time of sale. But we have here involved an added $5,800, being a tax imposed upon jewelry "sold at retail." Until there is a sale, there is no tax, and it is "10 per centum of the price for which so sold." Sec. 2400, I. R. C. Clearly the value of the ring at the time of sale did include previous expenses, including taxes, but did not include the 10 per cent here considered. Did the property take on, as of the date of the gift a few days later, additional value, which should be taxed, because of the addition of the 10 per cent tax? The effect under the majority view is that the Government is taxing upon a tax which it has just required the purchaser of the ring to pay, in addition to the value at the time of purchase. I do not think that additional value after the purchase is demonstrated by the mere tax. On the contrary, it seems to me that the record affirmatively demonstrates that the addition is a tax and not an appreciation in value. I would hold that the sale, about a week earlier than the gift, showed the value, and I therefore dissent.

ARUNDELL and JOHNSON, *JJ.*, agree with this dissent.

---

HARRON, *J.*, dissenting: Section 2403 (c) of the retailers' excise tax provisions provides that in determining the price for which an article

is sold "there shall be *excluded* the amount of the tax [retailers' excise tax], whether or not stated as a separate charge." (Italics added.) It is my understanding that the word "charge" is used in section 2403 (c) as meaning "tax." The petitioner paid the excise tax and the retail seller merely collected it for the Government. The excise tax is a tax on the article. I am unable to find in the gift tax provisions (sections 1000 and 1005) any basis for concluding that the retail excise tax upon the article must be considered as adding to the value of the article. The consideration paid for the ring was $58,000, only, and that is the value which measures the tax upon the immediate transfer of it by gift. I respectfully dissent.

VAN FOSSAN, ARNOLD, and JOHNSON, *JJ.*, agree with this dissent.

---

JOHNSON, *J.*, dissenting: The idea of a tax upon a tax is repellent initially. Here, in addition to the price of the ring of $58,000, the decedent paid $5,800, or 10 per cent of the price, to the retailer to cover the Federal excise tax. In addition, under the determination of respondent and under the holding of the majority opinion, the estate of the decedent must pay a Federal gift tax upon that same $5,800, as representing part of the value of the ring. Such a duplication is to be avoided unless required by express statutory words. *United States v. Supplee-Biddle Hardware Co.*, 265 U. S. 189.

There is nothing in the statutes, or even in the regulations, which requires the result reached here. As noted in the majority opinion, in valuing property for gift tax purposes, section 86.19 (a) of Regulations 108 provides that the "value of the property is the *price* at which such property would change hands between a willing buyer and a willing seller * * *." (Italics supplied.) Here the *price* of the ring was $58,000. Indeed, if that was not the price, one may well ask, On what was the tax of $5,800 computed? That price is the best indication we have of the fair market value of the ring. Had the ring been received by the decedent by inheritance, and he had then given it to his wife, and the same ring was, at the time of gift, being listed by retailers at a price of $58,000, plus excise tax, without doubt a jeweler would have appraised the ring received by inheritance at a fair market value of $58,000. We are only fixing the value of the ring itself, which is all that the wife received, not the amount the decedent was out of pocket in obtaining the ring. Believing that the price and hence the fair market value of the ring given by the decedent was $58,000, I respectfully dissent from the holding of the majority.

ARUNDELL, VAN FOSSAN, ARNOLD, and HARRON, *JJ.*, agree with this dissent.