**PUBLICKER v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 10951.**

United States Court of Appeals
Third Circuit.

Argued March 20, 1953.

Decided July 16, 1953.

Rehearing Denied Aug. 19, 1953.

Earl Jay Gratz, Philadelphia, Pa., for petitioner.

Fred E. Youngman, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Sp. Asst. to the Atty. Gen., on the brief), for repondent.

Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.

BIGGS, Chief Judge.

The issue before us is the value for gift tax purposes of jewelry given by the petitioner, Mrs. Rose Publicker, to her daughter in 1946 and 1947.

26 U.S.C.A. § 1000(a) states: "For the calendar year 1940 and each calendar year thereafter a tax, computed as provided in section 1001, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift. * * *" Section 1005 provides: "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." Treasury Regulations 108 further explains the meaning of "value" as used in the statute: "Sec. 86.19. *Valuation of Property.* (a) *General.* The statute provides that if the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift. The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. The value of a particular kind of property is not to be determined by a forced sale price. Such value is to be determined by ascertaining as a basis the fair market value at the time of the gift of each unit of the property. For example, in the case of shares of stock or bonds, such unit of property is a share or a bond. All relevant facts and elements of value as of the time of the gifts should be considered."

The following facts are not in dispute. On April 9, 1941, Mrs. Publicker purchased from Milner, of a Philadelphia wholesale and retail diamond firm, a diamond ring containing a marquise-cut diamond of 20.5 carats in an iridium platinum setting with two tapered, bullet-shaped diamonds. For this ring Mrs. Publicker paid $45,000 plus a ten per cent Federal excise tax of $4,500. On October 2, 1946, Mrs. Publicker gave the ring to her daughter, and in her gift tax return for that year she reported its value on the date of gift as $50,000.

On February 5, 1947, Mrs. Publicker purchased from Harry Winston, Inc., in New York a second diamond ring containing an emerald-cut diamond weighing 33.45 carats in a ring mounting. On the same day she bought from the same seller a pair of mar-

quise-cut diamond ear clips of .56 carat. Mrs. Publicker paid $200,000 for the ring and the ear clips, plus a twenty per cent Federal excise tax [1] of $40,000. She gave these pieces of jewelry to her daughter on July 16, 1947, valuing them in her 1947 gift tax return at $115,000 for the ring and $6,000 for the ear clips.

Upon examination of Mrs. Publicker's gift tax returns the Commissioner sent to her his notices of deficiency in which he valued the 1946 gift at $100,000 and the 1947 gifts at $240,000. The deficiencies claimed were $13,875 and $43,162.50 respectively.[2]

Mrs. Publicker contested the claimed deficiencies in proceedings brought by her before the Tax Court. Upon trial the Tax Court redetermined the deficiencies for 1946 and 1947 in the respective amounts of $2,733.75 and $41,272.50, finding the value of the 1946 gift to be $58,500 and the value of the 1947 gifts to be not less than $240,000. The memorandum findings of fact and opinion of the Tax Court are not reported officially but see CCH Dec. 18,993(M) at 11 TCM 519. Mrs. Publicker petitions for review.

■ The criteria to be employed in determining "value" necessarily must differ somewhat in respect to the kinds of property to be valued under the statute. A question of law is presented therefore as to the standard to be applied. See Powers v. C. I. R., 1941, 312 U.S. 259, 260, 61 S.Ct. 509, 85 L.Ed. 817. But the Tax Court's determination of value, the proper standard having been applied by it, is a finding of fact. This finding, based upon the resolution of conflicting evidence, may not be disturbed unless clearly erroneous. See 26 U.S.C.A. § 1141(a) and FRCP, Rule (52)(a), 28 U. S.C.A.

At the trial before the Tax Court the petitioner called three expert witnesses who testified to the fair market value of the large diamonds in the two rings and of the ear clips. The qualifications of these witnesses were not questioned. They were diamond merchants of many years experience whose principal business was dealing at wholesale in unmounted diamonds but who also had had some experience in selling diamonds at retail. The first witness, Milner, from whom, as we have said, Mrs. Publicker had purchased the ring in 1946, set a value of $46,650 on it, of which $46,125 represented the value of the large stone and $500 the value of the two bullet-shaped stones and the setting. On the 1947 gifts Milner set values of $109,000 for the ring and $5500 for the ear clips. In determining these amounts, Milner did not take into consideration the Federal excise tax.

The second witness, Sommer, stated that the value of the 1946 gift was $46,125 for the diamond, which, at the time of his appraisal, had been removed from its setting. On the 1947 gifts he set values of $73,590 for the ring and $5000 for the ear clips. These appraisals were exclusive of Federal excise tax and of the ten per cent mark-up which Sommer's firm ordinarily charged on resale of diamonds purchased.

The third witness, Sumnick, testified that he would pay $51,250 for the large diamond in the 1946 gift, $117,000 for the large diamond in the 1947 ring and $5000 for the ear clips. These amounts were exclusive of the Federal excise tax and of any mark-up on resale of the diamonds to a retailer. Sumnick testified that he would probably sell the diamonds at a profit of about ten per cent to one of the few retail houses handling diamonds of such size and that on resale at retail these houses would in turn add a mark-up of indeterminate amount, depending on the means and enthusiasm of the ultimate purchaser.

Also included in the taxpayer's evidence was a letter from Harry Winston, Inc., the seller of the 1947 gifts, in which it was stated that as of July 8, 1947, Mrs. Pub-

1. This tax was increased from ten to twenty per cent in 1944 as a temporary war measure. 58 Stat. 61. But by the Act of March 11, 1947, 61 Stat. 12, the termination date of this increase was removed. The present provision is contained in 26 U.S.C.A. § 1650.

2. These were the net amounts claimed in connection with these gifts. The total deficiencies asserted were greater but included amounts unrelated to the present controversy. See Transcript of testimony, pp. 3–4.

licker might "with some effort * * * be able to procure $115,000 in the present market" for the 1947 ring. The ear clips were considered salable for $6000. No mention was made of the Federal excise tax. This letter had been attached by Mrs. Publicker to her 1947 gift tax return.

Cross examination of the taxpayer's witnesses developed the fact that even among the large wholesale and retail diamond merchants, sales of diamonds of the size of those here involved were extremely rare. Milner, however, admitted that between 1941 and 1946 there was an appreciation in the value of large diamonds amounting to about twenty per cent.

The Commissioner's evidence of fair market value consisted of the testimony of one expert witness, Lauterbach, who was a jewelry appraiser of wide experience but who had never been in the business of buying and selling diamonds. He stated that the value in the retail market of the 1946 gift was $90,000 and of the 1947 ring $201,000, exclusive of Federal excise tax. In reaching these figures Lauterbach emphasized the perfection of the large stones and the impossibility of duplicating them in case of loss. He gave no opinion as to the value of the ear clips. The Commissioner also relied in part upon the stipulated cost to Mrs. Publicker of the gifts as indicative of their fair market value.

The Tax Court considered cost the best evidence of value, in view of the irreconcilable conflict between the testimony of the expert witnesses. The Tax Court's valuations appear to be based entirely on cost except that in the case of the 1946 gift twenty per cent of the cost (not including Federal excise tax) was added to indicate an appreciation in value between 1941 and 1946.

Does this record reveal either a mistaken selection of the criteria of value by the Tax Court or such disregard of Mrs. Publicker's evidence as to render the findings clearly erroneous?

The taxpayer contends that it was error for the Tax Court to place much reliance on evidence of these diamonds' value in a "retail market" since no such market existed or exists for gems of such size and uniqueness. Mrs. Publicker asserts that the only ready market in the field of large diamonds is among dealers, and that this market alone should be considered in valuing the 1946 and 1947 rings, if not the ear clips. The Tax Court said, however, that it was not shown "that there is any more of an established wholesale market than there is a retail market." We think this a fair comment on the evidence. The testimony of the taxpayer's witnesses shows that there were at least three dealers willing to purchase these large stones for various prices. It does not show that there were not also individuals who might buy them. The taxpayer admits that there are a few such individuals, perhaps as many as there are firms dealing in such unusual stones. While it may be true that the speediest and most convenient way to dispose of a large diamond is by sale to an established dealer, wholesale or retail, the possibility of a more favorable private sale cannot be entirely eliminated. The apparent willingness of Mrs. Publicker's witnesses to purchase the diamonds for the values they set at least implies their confidence in an available market for resale, either to another dealer or to an individual. Moreover, Treasury Regulations 108, § 86.19(a), removes from consideration elements suggesting compulsion in determining whether a sale, actual or possible, is evidence of value. We think Mrs. Publicker places undue emphasis on the necessity for a "ready" market for the diamonds.

The fact that a piece of property is unique does not in our view establish that there is no market for that property. The statute, and the regulations, cannot be limited to apply only to fungible goods. Every piece of land and many paintings are unique. Large diamonds may not exist to any appreciable extent in the retail market, but there remains a market, however limited, for any particular large diamond, and that individual buyers are a part of that market is shown by Mrs. Publicker's purchase of the gifts here involved.

While it is true that "value" in the statute is now commonly taken to mean "fair market value" as mentioned in the regulation, we do not propose to limit the scope of the statute by too strict a view of the

required market for the various kinds of property taxed. The regulation also provides that, "The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, * * *. All relevant facts and elements of value as of the time of the gift should be considered."

Guggenheim v. Rasquin, 1941, 312 U.S. 254, 61 S.Ct. 507, 85 L.Ed. 813, lends support to this conclusion. In that case the property valued, a single premium life insurance policy, had no realizable market value equivalent to the cost of the policy to the donor. The Supreme Court, nevertheless, held the value of the entire bundle of rights in the policy to be its cost to the donor, stating: "Cost is cogent evidence of value. * * * Cost in this situation is not market price in the normal sense of the term. But the absence of market price is no barrier to valuation." See 312 U.S. at page 258, 61 S.Ct. at page 509. If this is the applicable law, the Tax Court's approach in the instant case is correct, for here cost and market value realizable on sale of the diamonds to an individual for his personal use might well have been substantially the same.

Heiner v. Crosby, 3 Cir., 1928, 24 F.2d 191, 193, cited by Mrs. Publicker, is not to the contrary despite the statement contained in the opinion that "sales in a restricted market, may [not] signify a fair market price or value * * *." In that case shares of stock were involved. The normal market for these shares, fungible items, had been artificially restricted and depressed by monopolistic practices on the part of the controlling shareholders. This court properly preferred to use the value of the corporate assets and evidence of a bona fide private offer for the stock rather than to rely exclusively on the price on the Pittsburgh Stock Exchange in determining value of the stock. In the instant case, there was no showing that the available market, though narrow, was less than the normal market for the diamonds and was therefore not capable of producing the best price to be obtained.

The taxpayer also contends that whatever the market, the market value must be "fair" and that in the instant case it is apparent that she was overreached in her purchase of the 1947 ring. Her argument appears to be that not only did she pay more than the ring was worth in February of 1947 but that five months later, on the date of gift, no other purchaser could have been induced, short of fraud, to pay a like amount for the ring. There is no evidence of fraud in her original purchase as the Tax Court noted in relying on cost to establish value. Moreover, it was for the Tax Court to determine what weight should be given to the opinions of Mrs. Publicker's experts and to the letter from Harry Winston, Inc., received a few days before the 1947 gift was made to her daughter. We think that the Tax Court's decision to disregard the conflicting expert testimony in preference for undisputed evidence of an actual sale of the identical property here involved was not erroneous. The Tax Court could properly have considered that five months after the purchase by Mrs. Publicker of the 1947 ring another purchaser might well have considered the ring worth the amount paid by Mrs. Publicker.

The Tax Court may have had in mind that the intangible elements of enjoyment in ownership of the world's rarities probably do enhance their value. Cf. Guggenheim v. Rasquin, supra. The fact that such elements vary among owners does not discount their importance. The variance serves the more strongly to remind the fact finder that in determining gift tax valuations reliance upon concrete evidence in the form of actual sales is desirable.

■ What we have said applies in large part to the 1946 gift also. In the purchase of both gifts the only unusual circumstances discounting reliance on the isolated sales as indicative of value were the nature of the commodity purchased and the wealth of the purchaser. We do not think that these unavoidable circumstances in dealings in large diamonds are sufficient to preclude a court from using cost to ascertain value. The purchase of the 1946 gift of course preceded the date of gift by five years, but Mrs. Publicker does not contend that remoteness of the purchase destroys its worth as evidence of value in 1946. Her own expert stated

that the value of large diamonds rose about twenty per cent during those five years. The Tax Court properly took this testimony into account in determining the value of the 1946 gift.

A more difficult problem remains—whether it was proper for the Tax Court to include in value that part of Mrs. Publicker's cost of the gifts which represented the Federal excise tax. The instant case aside, we can find but three decisions on this question, all holding the excise tax includible. There are two decisions by the Tax Court, Gould's Estate, 1950, 14 T.C. 414 and Duke's Estate, CCH Dec. 18,705 (M), 10 TCM 1175 (1951), and Duke v. Commissioner, 2 Cir., 1952, 200 F.2d 82. In the instant case the Tax Court considered its decision in Gould controlling.

The Federal excise tax was imposed upon jewelry by virtue of 26 U.S.C.A. § 2400 and the rate of this tax was set at twenty per cent as of April 1, 1944. See 26 U.S. C.A. § 1650. Prior to that date the rate was ten per cent. The tax applies only to sales at retail and is collectible and returnable by the retail seller. 26 U.S.C.A. § 2403 (a). The tax is levied upon the retail price, and in determining, "for the purposes of this chapter, the price for which an article is sold, there shall be included any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment, but there shall be excluded the amount of tax imposed by this chapter, whether or not stated as a separate charge." 26 U.S.C.A. § 2403(c). A penalty is imposed for representation to a purchaser that the seller's charge does not include the tax: "Whoever in connection with the sale or lease, or offer for sale or lease, of any article taxable under this chapter, makes any statement, written or oral, in advertisement, or otherwise, intended or calculated to lead any person to believe that the price of the article does not include the tax imposed by this chapter, shall on conviction thereof be punished by a fine of not more than $1,000." 26 U.S.C.A. § 2409.

The provisions last quoted are emphasized by note 1 cited to the text, 200 F.2d at page 84, in Judge Frank's opinion. The words quoted apparently mean that for purposes of the excise tax Congress wished the advertised or stated price of the articles covered by the tax to include the amount of the tax. In short, there is to be one price for the article which is to include the tax and, in effect, the tax is not to show insofar as members of the purchasing public are concerned. But the amount of the tax is to be made apparent when the seller makes his return and pays the excise tax for the amount of the tax must be stated in connection with the price of the article sold. It should be pointed out again, however, that the pertinent gift tax regulation, quoted above, states that "the value of the property" shall be the *price* at which the property would change hands between "a willing buyer and a willing seller". It is contended by the respondent that since the excise tax law requires the value of the property plus the excise tax to constitute price, it must follow that the amount of the excise tax must be included in the value of the property for gift tax purposes. As we understand it this was the ground on which the Tax Court decided the Gould case. We will state what we believe to be the Tax Court's view.

Judge Murdock, writing for the majority of the Tax Court in the Gould case [3] chose the example of a carton of cigarettes purchased by an individual for a friend and states that "the man on the street" regards the excise tax on cigarettes as part of the cost of an article. Judge Murdock goes further and considers that the man on the street would also deem the tax to be part of the "purchase price" of the cigarettes. It is true that such a conclusion is a practical one for one cannot buy cigarettes without paying the tax. It can also be argued that since one cannot buy a diamond at retail without paying the tax the tax is part of the price of the diamond.[4] But it is indeed an odd conception to say that an ex-

---

3. Six Judges dissented.

4. We note that "price" is used in incon- sistent ways in §§ 2403(c) and 2409. § 2403(c) excludes the excise tax from "price." § 2409 imposes a penalty for

256

cise tax is part of the value of an article whether the tax be paid or unpaid.[5]

Theoretically, if the position of the Tax Court in the Duke and Gould cases be accepted, each time a diamond is sold at retail it acquires as an additional value the amount of the excise tax paid by the seller. If a diamond worth $100 is sold at retail ten times, excise taxes being passed along to each successive purchaser, it would seem to follow under the Tax Court's reasoning that the value of the stone, for no other reason than the successive impositions of the excise tax, would be over $300. Theoretically also, if an excise tax becomes part of the *value* of a diamond sold at retail, the successive gift taxes imposed upon it by reason of several gifts should cause it to increase in value.

Both the gift tax statute and the excise tax statute deal with taxable events. The passing of property by inheritance is also a taxable event. One must look to the value of the property at the time of the happening of the taxable event and determine the amount of the tax, whether gift or estate. Of course, as to excise tax one looks to the retail price. An excise tax is imposed when jewelry is sold at retail and the amount of the tax becomes part of the "price" by statute. But may we say that when property passes by gift that it is anything other than the naked value of the gift at the time of the happening of the taxable event that determines the amount of the gift tax? So also with the estate tax. Otherwise taxation on taxation could ensue. We cannot conclude that Congress meant to dovetail the excise tax with the gift tax simply because Section 2409 of the excise tax prohibits the seller from representing that "the price of the article does not include the tax". But there are other considerations as we will point out in a succeeding paragraph.

■ The majority of the Tax Court criticize the argument that Treasury Regulations 108, Section 86.19(c) prescribing the use of stock market quotations in valuing gifts of shares of stock, apparently authorizes the use of these quotations without adding the taxes incurred in the actual transfer of shares. We may take judicial notice of the fact, as could the Tax Court, that the prices commonly quoted for stock exchange transactions do not include these taxes. In other words, as we read the regulation last referred to, not all of the cost to the purchaser of a share of stock is included in the value of the stock for gift tax purposes. We think the Treasury Regulations relating to stock may reflect the sounder public policy, as the petitioner contends, but such questions are for Congress and not for the courts.

■ We conclude that the decision of the Tax Court must be affirmed. Our conclusion is based primarily on the ground that the applicable Treasury Regulations 108, Section 86.19, dealing with the valuation of property for gift tax purposes states that "The value of the property is the price at which such property would change hands between a willing buyer and a willing seller. * * *" The gift tax regulation provides therefore, however inconsistently, for valuation of the property as if the tax incidence were based on a sale and not on a gift. Obviously, valuing the property as a sale, the amount of the excise tax must be included for both the buyer and the seller would have in mind and necessarily would calculate the amount of the excise tax as part of the cost of the property.

The substance of the presently applicable regulation, viz., Regulations 108, Section 86.19, has been included in the Treasury Regulations relating to the gift tax since they were first promulgated on October 3,

representing that the price does not include the exercise tax. This last use is in conflict with the construction of the gift tax regulations favored by the six dissenting Judges in the Gould case.

5. Contrast the provisions of Section 1009, Title 26, to the effect that the gift tax,

"* * * shall be a lien upon all gifts made during the calendar year, for ten years from the time the gifts are made.", and "If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift."

1933, under the number Treasury Regulations 79 (1933). The regulation therefore has received the sanction of Congress in the amendments effected to the Act and as part of the present Internal Revenue Code. See United States v. Dakota-Montana Oil Co., 1933, 288 U.S. 459, 466, 53 S.Ct. 435, 77 L.Ed. 893; Helvering v. R. J. Reynolds Tobacco Co., 1939, 306 U.S. 110, 115, 59 S. Ct. 423, 83 L.Ed. 536; Commissioner of Internal Revenue v. Flowers, 1946, 326 U.S. 465, 469, 66 S.Ct. 250, 90 L.Ed. 203. The validity of the regulation has not been seriously attacked by the petitioner.

It should also be borne in mind that the construction which we have effected seems to fit well into the congressional pattern of gift tax and excise tax. It would seem to follow that Congress had in mind the consistent statutory pattern whereby the amount of the excise tax should be included in ascertaining the value of an article, at least when as here only one excise tax is involved.

Accordingly, the decision of the Tax Court will be affirmed.

GOODRICH, Circuit Judge (dissenting in part).

With the conclusion that the decision of the tax court is not clearly erroneous on the general question of value in this case I have no disagreement. But I cannot go along with the addition of United States excise tax to sale price in ascertaining value. The reason is well set out in the discussion found in the majority opinion. If Mrs. Publicker gave these diamonds to her daughter and her daughter gave them to a friend and that friend gave them to another friend there would not, I take it, be additional sums added to value as a result of each transfer. But if the diamonds went through this same number of sales transaction somehow or other the value is supposed to be increased by the amount of tax involved in each instance. That seems to me to be incongruous. Some incongruities are unavoidable in tax law but this is one which seems to me as avoidable as it is obvious.