PAUL W. ADAMS and LOUISE B. ADAMS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Adams v. Commissioner
Docket No. 7403-80.
United States Tax Court
T.C. Memo 1985-268; 1985 Tax Ct. Memo LEXIS 372; 50 T.C.M. (CCH) 48; T.C.M. (RIA) 85268; June 3, 1985. Sherin V. Reynolds, for the petitioners. Robert J. Percy, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a $38,000 deficiency in petitioners' 1976 Federal income taxes. The issues for decision are: (1) The fair market value of an original prototype model of the "Norden Bombsight" donated to the Smithsonian Institution, National Air and Space Museum, on December 29, 1976; and (2) whether petitioners are entitled to a deduction under section 162 for certain travel and client expenses claimed on their 1976 income tax return. FINDINGS OF FACT Some of the facts have *373 been stipulated and are found accordingly. Paul W. Adams (hereinafter petitioner) and Louise B. Adams, husband and wife, resided in Greenwith, Connecticut, when they filed their petition herein. Petitioners filed their 1976 joint Federal income tax return (Form 1040) with the Internal Revenue Service Center, Andover, Massachusetts. Norden Bombsight
Sometime during the early 1920's, Mr. Carl L. Norden, an inventor, contracted with the United States Navy to design an instrument that would enable our armed forces to bomb enemy targets as precisely as possible from aircraft. Mr. Norden designed what became known as the "Norden Mark XV Bombsight" (hereinafter the "Norden Bombsight" or, simply, the "bombsight"). On or about March 25, 1924, three original prototype models of the bombsight were completed by machinists and craftmen from Mr. Norden's drawing. After testing by the Navy, two of the models were modified by Mr. Norden. During 1931 a patent for the Norden Bombsight was issued to Mr. Norden; this patent was kept secret and not declassified until 1947. The Norden Bombsight was used extensively by the U.S. Armed Forces for aerial bombing in Europe and the Pacific during *374 World War II. In 1949, petitioner purchased all the stock of Norden Laboratories Corporation (hereinafter Norden Laboratories) from Carl L. Norden, its founder, president, and chairman of the board, and his partner, Theodore H. Barth. Mr. Norden then retired from Norden Laboratories and petitioner became president of the corporation. Mr. Norden also controlled a corporation called Carl L. Norden, Inc. Shortly after petitioner acquired the stock of Norden Laboratories, Mr. Norden dissolved Carl L. Norden, Inc., and gave petitioner his desk, and several valuable pictures, paintings, and lithographs that were part of the furnishings of his New York office. Mr. Norden also personally gave petitioner the original prototype model of the Norden Bombsight. Petitioner accepted Mr. Norden's gifts and maintained continued possession, custody, and control of the bombsight until 1976. Petitioner kept the bombsight either in his home or in his office. Sometime during 1976, petitioner contacted Michael Collins, director of the Smithsonian Institution, National Air and Space Museum. Mr. Collins had requested that petitioner donate the bombsight to the museum. On December 29, 1976, petitioner *375 gave the original prototype model of the Norden Bombsight to the Smithsonian Institution, National Air and Space Museum. Petitioner had the bombsight appraised on April 19, 1977, by Mr. C. E. O. Walker. Mr. Walker was former president of the American Society of Appraisers and is otherwise qualified as an expert appraiser. It was Mr. Walker's opinion that the fair market value of the original prototype Norden Bombsight on December 29, 1976, was $75,000. On his joint return for 1976, petitioner attached a copy of Mr. Walker's appraisal report, and claimed a deduction in the amount of $75,000 for the donation of the bombsight to the Smithsonian Institution. In the statutory notice of deficiency, respondent determined that the fair market value of the Norden Bombsight was only $1,000 and disallowed the balance ($74,000) of the $75,000 deduction claimed on petitioners' return. At trial, respondent argued that petitioner did not have title to the bombsight and therefore no deduction is allowable for his contribution to the Smithsonian Institution. Travel expenses
Petitioner, an attorney, graduated from Yale Law School in 1938. During 1977, petitioner practiced law in the *376 State of Connecticut. Petitioner customarily paid travel and other expenses incurred in a client's behalf. Thereafter petitioner billed the client for his legal fees; such bills included, but did not itemize, any expenses he paid. During 1976, petitioner charged some travel expenses relating to his practice of law on an International Air. Travel card issued in the name of Marine Service Company. [1]
On his 1976 joint Federal income tax return, petitioner deducted $13,003 as travel expenses and $8,214 as expenses for clients. Petitioner's claimed travel expenses consisted of the following: (1) Amount attributed to Marine Service Company - $12,256.93; and (2) Penn Central Railroad tickets for business trips to New York City - $746.00. Petitioner's claimed client expenses consisted of the following: (1) Amount attributed to Marine Service Company - $2,799.04; and (2) other expenses - $5,415.38. In the statutory notice of deficiency, respondent disallowed petitioner's travel expense *377 deduction in the amount of $12,175.00 computed as follows: (1) disallowance of amounts attributable to Marine Service Company - $12,256.93; and (2) allowance of additional business expenses - $81.93. Respondent also disallowed petitioner's claimed client expenses in the amount of $2,588.00 computed as follows: (1) disallowance of amounts attributable to Marine Service Company - $2,799.04; (2) disallowance of claimed expenses as personal expenditures - $2,034.82; and (3) allowance of unclaimed business expenses - $2,246.32. OPINION Issue 1. Valuation of the Norden Bombsight
The primary issue for decision is the fair market value of the original prototype model of the Norden Bombsight as of December 29, 1976, the date on which petitioner contributed it to the Smithsonian Institution, National Air and Space Museum. Petitioner argues that the bombsight had a fair market value of $75,000 as determined by his expert's report dated April 19, 1977, and attached to petitioner's 1976 joint income tax return. On the other hand, respondent argues that petitioner did not have title to the bombsight and, therefore, is entitled to no deduction. Alternatively, respondent contends that *378 the fair market value of the bombsight did not exceed $1,000, the amount allowed in the statutory notice of deficiency. Respondent's first contention is that petitioner did not have title to the Norden Bombsight and, therefore, is entitled to no deduction. This is a new issue which was not raised by respondent in the statutory notice of deficiency or the answer. [2] Accordingly, respondent bears the burden of proving by a preponderance of the evidence that petitioner did not have legal title to the bombsight as of December 29, 1976. Rule 142(a), Tax Court Rules of Practice and Procedure; Estate of Falese v. Commissioner,58 T.C. 895, 899 (1972). The bombsight in question was a prototype model developed by Mr. Norden during the early 1920's. The record shows that Mr. *379 Norden kept the model in his office until 1949 when he gave it to petitioner. Petitioner thereafter had unchallenged possession, custody, and control over the bombsight until 1976 when he donated it to the Smithsonian Institution, National Air and Space Museum. Respondent argues that the bombsight was U.S. Government property and that, therefore, neither Mr. Norden nor petitioner ever had legal title to the bombsight. In support of his position, respondent points out that the bombsight was one of three models Mr. Norden developed under a contract with the Navy's Bureau of Ordinance. According to correspondence between the Navy Bureau of Ordinance and Mr. Norden during the early 1920's, two of the original three model bombsights were modified at the Navy's request. Thus it appears from the record before us that the bombsight in question was the original unmodified model developed under the contract with the Bureau of Ordinance. Respondent concludes, therefore, that title to the bombsight was vested in, and remains with, the U.S. Government. Respondent's argument, although superficially appealing, is nonetheless defective. The crux of respondent's theory is that the unmodified *380 model developed under contract with the U.S. Government remained the property of the U.S. Government from 1923 through 1976. However, the foundation of respondent's theory -- the contract -- is missing. We do not know, nor will we speculate about, the terms of the contract between Mr. Norden and the U.S. Government. Moreover, even were we to assume that under the terms of the contract the model was the property of the U.S. Government, that assumption alone would not dispose of the title issue. The fact remains that Mr. Norden and then petitioner had exclusive, unchallenged possession and control over the model for over 50 years. Such uninterrupted custody indicates either that the Navy Bureau of Ordinance gave the model to Mr. Norden, its inventor, or that it abandoned the property. In either case, title would vest with petitioner. Accordingly, we must hold that respondent has failed to prove that petitioner did not have legal title to the bombsight. We now turn to the primary issue before us, the fair market value of the Norden Bombsight as of December 29, 1976. The value of a charitable contribution is purely a factual one and one that this Court has traditionally admonished *381 the parties for not deciding among themselves. Messing v. Commissioner,48 T.C. 502, 512 (1967). "The legal standard defining fair market value is 'the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts'." Cupler v. Commissioner,64 T.C. 946, 955 (1975), citing Mauldin v. Commissioner,60 T.C. 749, 758 (1973); section 1.170-1(c)(1), Income Tax Regs. The fact that the property is unique and that there is no "market price" is not a barrier to valuation. Cupler v. Commissioner,supra.See Publicker v. Commissioner,206 F.2d 250, 253 (3d Cir. 1953). In determining value, the use to which the donated property will be put is a relevant factor. Guggeheim v. Rasquin,312 U.S. 254, 258 (1941). In short, we will weigh all the relevant evidence in the record. Cupler v. Commissioner,supra;Mauldin v. Commissioner,supra at 759; Kaplan v. Commissioner,43 T.C. 663, 665 (1965). Respondent's *382 expert, Wiley C. Grant, stated in his original report dated April 10, 1980, that "the fair market value on the valuation date is $1,000." Mr. Grant's valuation is based largely upon his premise that petitioner did not have title to the bombsight. Indeed, in Mr. Grant's supplemental report dated February 24, 1983, he flatly concluded "it is U.S. Government property." As we stated earlier, we are not convinced that the bombsight is U.S. Government property. Rather the record before us suggests that Mr. Norden had title to the property when he gave it to petitioner and, therefore, that petitioner had title to the property when he gave it to the Smithsonian Institution. Moreover, respondent's expert, rather than attempting to value the bombsight independently, merely tried to discredit petitioner's expert's report. Accordingly, we attach little weight to respondent's expert's opinion as to the fair market value of the bombsight on the date it was donated to the Smithsonian Institution. See Dayton Power and Light Co. v. Public Utilities Commission,292 U.S. 290, 298-300 (1934). Petitioner's expert, Mr. C. E. O. Walker, appraised the bombsight as of December 29, 1976, at *383 $75,000. Mr. Walker's original expert report was dated April 19, 1977, and demonstrated a comprehensive attempt to determine the bombsight's fair market value. Moreover, Mr. Walker testified at trial and we found him to be a very credible witness. He acknowledged that appraising is not an exact science, especially in the case, such as the case before, us, where the property is unique and there are no comparable sales to establish market price. Because of the uniqueness of the bombsight, Mr. Walker first investigated its historical significance by speaking with museum directors, collectors, dealers, and other knowledgeable persons. After confirming that the Norden Bombsight was authentic and unquestionably of great historical value, Mr. Walker investigated the market for historic items. He noted the prices that various historic items had commanded during 1976, although he admitted that such prices are not indicative of the value of the bombsight. Rather, the items were inserted in his report simply for the purpose of demonstrating that there existed a market demand for collector's items. In attempting to value the bombsight without comparable sales, Mr. Walker used the estimated *384 cost method. Under this method, Mr. Walker estimated that it would cost between $65,000 to $97,500 to recreate the original prototype model. It was Mr. Walker's belief that for objects of historic interest, the fair market value tends to approximate its replacement cost, and in this instance, the replacement cost lies within the range of prices paid for historically significant items. After evaluating all the facts and circumstances, Mr. Walker determined that the fair market value of the original model of the Norden Bombsight was $75,000 as of December 29, 1976. While we generally accept Mr. Walker's opinion as to the value of the bombsight, we do note that he did not consider title to the property in making his report. At trial, he admitted that if title were clouded, it would diminish the price a willing buyer would pay for the property. Although respondent has not established that petitioner lacked legal title to the bombsight, he has, at the very least, raised the question. We believe that any cloud on title, no matter how slight, will have a negative effect on the value of property. Thus, even though the evidence strongly suggests that petitioner did have legal title *385 to the bombsight, we must reduce Mr. Walker's appraisal of the fair market value accordingly. Exercising our best judgment on the record before us, we conclude that the value of the Norden Bombsight on the date of its donation to the Smithsonian Institution, National Air and Space Museum, was $65,000. Issue 2. Travel and Client Expenses
On his 1976 joint income tax return petitioner claimed travel expenses in the amount of $13,003. In addition, petitioner claimed expenses for clients in the amount of $8,124. In the statutory notice of deficiency, respondent disallowed $12,175 of petitioner's claimed travel expenses. With respect to the expenses for clients, after various adjustments, respondent disallowed $2,587.54 of petitioner's claimed expenses. The determinations made in the statutory notice of deficiency are presumptively correct and petitioner bears the burden of proving that respondent's determinations are in error. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). Deductions are a matter of legislative grace and petitioner must prove that he is entitled to deduct the items claimed. New Colonial Ice Co. v. Commissioner,292 U.S. 433, 440 (1934). *386 At trial, petitioner was unable to substantiate any of his claimed travel expenses or client expenses. Although we do not doubt that petitioner may have incurred travel and client expenses in the course of his practice of law, petitioner is not relieved of the obligation to produce records or other evidence to establish the appropriateness of the claimed deductions. Moreover, at trial petitioner had no recollection of the expenses in issue. His testimony was vague and nebulous, and it shed little light on the nature of the expenses claimed. Accordingly, we hold that petitioner has failed to carry his burden of proof on this issue and sustain respondent's determination. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Petitioner was president of Marine Service Company which he organized on February 28, 1974, as a nonprofit, nonstock corporation to engage in a cooperative purchasing service for yacht owners.↩
2. In the statutory notice of deficiency respondent determined that the fair market value of the bombsight did not exceed $1,000 and he allowed petitioner a deduction for that amount. The title issue was first raised in respondent's expert's report dated April 10, 1980, again in the expert's supplemental report dated February 24, 1983, and in respondent's trial memorandum submitted at trial.↩