GUGGENHEIM *v.* RASQUIN, ADMINISTRATRIX.

No. 92. Argued January 6, 7, 1941.—Decided February 3, 1941.

*Mr. John G. Jackson, Jr.,* with whom *Mr. Paul B. Barringer, Jr.* was on the brief, for petitioner.

*Mr. J. Louis Monarch,* with whom *Solicitor General Biddle, Assistant Attorney General Clark,* and *Messrs. Sewall Key, Arnold Raum,* and *Joseph M. Jones* were on the brief, for respondent.

*Messrs. J. Merrill Wright* and *David R. Shelton* filed a brief on behalf of Martha F. Mason, as *amicus curiae,* urging reversal.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

It is provided in the Revenue Act of 1932 (47 Stat. 169, 248) that for gift-tax purposes the amount of a gift of property shall be "the value thereof at the date of the gift." § 506. This controversy involves the question of whether such "value" in case of single-premium life insurance policies, which are irrevocably assigned simultaneously with issuance, is cost to the donor or cash-surrender value of the policies. The case is here on a petition for certiorari which we granted because of a conflict among the Circuit Courts of Appeals[1] as respects the proper method for valuation of such gifts made prior to 1936.[2]

---

[1] In conflict with the decision below are *Commissioner* v. *Haines,* 104 F. 2d 854 (C. C. A. 3d); *Helvering* v. *Cronin,* 106 F. 2d 907 (C. C. A. 8th); *United States* v. *Ryerson,* 114 F. 2d 150 (C. C. A. 7th), discussed in Paul, Studies in Federal Taxation (3d series) pp. 403, *et seq.*

[2] Art. 19 (9), Treasury Regulations 79, promulgated February 26, 1936, provides that replacement cost at the date of the gift is the measure of value of a single-premium life insurance policy.

In December, 1934, petitioner purchased, at a cost of $852,438.50, single-premium life insurance policies on her own life in the aggregate face amount of $1,000,000. At substantially the same time she assigned them irrevocably to three of her children. Her gift-tax return listed the policies at their asserted cash-surrender value[3] of $717,-344.81. The Commissioner determined that the "value" of the policies was their cost and assessed a deficiency which petitioner paid. This is a suit for a refund. Judgment for petitioner in the District Court was reversed by the Circuit Court of Appeals. 110 F. 2d 371.

We agree with the Circuit Court of Appeals that cost rather than cash-surrender value is the proper criterion for valuation of such gifts under § 506 of the Act.

Cash-surrender value is the reserve less a surrender charge. And in case of a single-premium policy the reserve is the face amount of the contract discounted at a specified rate of interest on the basis of the insured's expected life. If the policy is surrendered, the company will pay the cash-surrender value. It is asserted that the market for insurance contracts is usually the issuing companies or the banks who will lend money on them; that banks will not loan more than the cash-surrender value; and that if policies had an actual realizable value in excess of their cash-surrender value, there would arise a business of purchasing such policies from those who otherwise would surrender them. From these facts it is urged that cash-surrender value represents the amount which would be actually obtained for the policies in a willing buyer-willing seller market—the test suggested

---

[3] The government asserts that none of the policies had a cash-surrender value prior to the expiration of one year. In view of our disposition of the case we do not stop to decide whether, in view of the pleadings and the stipulation, that position can be maintained here.

by Treasury Regulations 79, Art. 19 (1), promulgated October 30, 1933.[4]

That analysis, however, overlooks the nature of the property interest which is being valued. Surrender of a policy represents only one of the rights of the insured or beneficiary. Plainly that right is one of the substantial legal incidents of ownership. See *Chase National Bank* v. *United States,* 278 U. S. 327, 335; Vance on Insurance (2d ed.) pp. 54–56. But the owner of a fully paid life insurance policy has more than the mere right to surrender it; he has the right to retain it for its investment virtues and to receive the face amount of the policy upon the insured's death. That these latter rights are deemed by purchasers of insurance to have substantial value is clear from the difference between the cost of a single-premium policy and its immediate or early cash-surrender value—in the instant case over $135,000. All of the economic benefits of a policy must be taken into consideration in determining its value for gift-tax purposes. To single out one and to disregard the others is in effect to substitute a different property interest for the one which was the subject of the gift. In this situation as in others (*Susquehanna Power Co.* v. *State Tax Comm'n,* 283 U. S. 291, 296) an important element in the value of the property is the use to which it may be put. Certainly the petitioner here did not expend $852,438.50 to make an immediate gift limited to $717,344.81. Presumptively the value of these policies at the date of the

[4] Art. 19 (1) provided: ". . . The value of property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. Where the property is sold within a reasonable period after the date of the gift, and it is shown that the selling price reflects the fair market value thereof as of the date of the gift, the selling price will be accepted as the amount of the gift. All relevant facts and elements of value should be considered in every case."

gift was the amount which the insured had expended to acquire them. Cost is cogent evidence of value. And here it is the only suggested criterion which reflects the value to the owner of the entire bundle of rights in a single-premium policy—the right to retain it as well as the right to surrender it. Cost in this situation is not market price in the normal sense of the term. But the absence of market price is no barrier to valuation.[5] *Lucas* v. *Alexander,* 279 U. S. 573, 579.

Petitioner, however, argues that cash-surrender value was made the measure of value by Art. 2 (5), Treasury Regulations 79, promulgated October 30, 1933, which provided that the "irrevocable assignment of a life insurance policy . . . constitutes a gift in the amount of the net cash surrender value, if any, plus the prepaid insurance adjusted to the date of the gift." The argument is that under this regulation the reserve in case of a single-premium policy covers the prepaid insurance and represents the entire value of the policy. The regulation is somewhat ambiguous. But in our view it applied only to policies upon which current premiums were still being paid at the date of the gift, not to single-premium policies. Accordingly, the problem here involves an interpretation of the meaning of "value" in § 506 unaided by an interpretative regulation.

*Affirmed.*

---

[5] In this connection it should be noted that Art. 19 (1), *supra,* note 4, did not establish market price as the sole criterion of value.