**CANDLER v. ALLEN, Collector of Internal Revenue.**

Civil Action No. 151.

District Court, M. D. Georgia, Macon Division.

Jan. 30, 1942.

436

Hirsch, Smith & Kilpatrick and E. D. Smith, Jr., all of Atlanta, Ga., for plaintiff.

T. Hoyt Davis, U. S. Atty., of Macon, Ga., for defendant.

LOVETT, District Judge.

In accordance with the opinion of the court this day announced, and the facts that have been stipulated by the parties, I find the following:

### Findings of Fact.

1. Charles Howard Candler, a resident of Georgia, on September 23, 1939, irrevocably assigned his entire interest in policy No. 1359818 of the Northwestern Mutual Life Insurance Company as a gift to his son, Charles Howard Candler, Jr. The policy was issued on the life of the donor on September 26, 1919, when he was forty-one years of age and was a twenty-payment-life contract. It became fully paid up on September 26, 1938, and thenceforward no further payments of premiums were required under the contract. At the date of the gift the cash surrender value of the policy was $33,905.15.

2. Plaintiff filed his gift tax return for the year 1939 with the Collector of Internal Revenue for the District of Georgia. He reported the amount of the gift at the cash surrender value stated above. As the result of an audit of the return, the Commissioner made an assessment of deficiency of gift tax for that year of $2,563.99, which de-ficiency resulted in part from the fact that the Commissioner valued the policy of life insurance mentioned at $38,990.50, the cost of duplicating the insurance for a single premium at the date of the gift. The amount of the deficiency applicable to the insurance contract is $938.64.

3. The deficiency assessment was paid, and appropriate claim for refund was filed, rejected by the Commissioner by his letter dated July 15, 1941, and this suit was then instituted for the recovery of the alleged illegal tax.

### Conclusions of Law.

For the reasons given in the opinion, the Commissioner of Internal Revenue legally made the deficiency assessment and the plaintiff is not entitled to recover.

### Opinion.

The controversy arises here in the determination of the value for gift tax purposes of a fully paid up policy of insurance on the life of the donor, issued on the twenty-payment-life plan, and irrevocably assigned by him to his son after the twenty payments had been made and the policy had matured in the sense that no further premium payments were required to keep it of force.

The tax-payer insists that the cash-surrender value at the time of the gift, which he gave in his gift-tax return, is to be conclusively taken as the value; the Commissioner determined that the single-premium cost of replacing the insurance at the then age of the donor—a larger amount—was the true value, and assessed a deficiency which the tax payer paid.[1] This suit is against the Collector to collect the alleged illegal tax. Trial by jury is waived.

In imposing a tax upon the transfer of property by gift, it was enacted that if the gift is made in property the "value" at the date of the gift shall be considered the "amount" of the gift.[2] The Revenue Act requires the Commissioner to prescribe rules and regulations for the enforcement

---

[1] The cost of the insurance, the twenty annual premiums paid with interest, was a greater sum than either the cash-surrender or re-placement value.

[2] Revenue Act of 1932, c. 209, 47 Stat. 169, Int.Rev.Code, sec. 1005, 26 U.S.C.A. Int. Rev.Code, § 1005:

"§ 501. Imposition of Tax

"(a) For the calendar year 1932 and each calendar year thereafter a tax, computed as provided in section 502, shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift * * *." 26 U.S.C.A. Int.Rev. page 580.

Sec. 506. [§ 1005.] "Gifts made in property

"If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." 26 U.S.C.A. Int.Rev.Code, § 1005.

of the act.[3] The applicable Treasury regulations with reference to life insurance contracts provide that the value is established "through the sale of the particular contract by the company or through the sale by the company of comparable contracts".[4]

The tax-payer says the surrender value must be accepted because that is all that can be realized now from the policy, the insured being alive. The Collector says the cash worth ignores other elements of value. I think the Collector is right, and the deficiency assessment should stand.

Cash surrender value of a life insurance policy is the reserve less a surrender charge. While under some circumstances it properly may be regarded as one of the factors in determining the value of a life insurance contract which has not matured through the death of the insured, it is not the sole test for determining value. When a fully paid up life insurance policy is irrevocably transferred by the insured to another, the nature of the property interest transferred by gift includes other things of value. One of the incidents of the ownership is the right to surrender and receive the cash value which the company has contracted to pay. Another right of ownership is to continue the insurance of force. The latter is usually regarded as the more valuable right. It is a matter of common knowledge that many owners of life insurance policies borrow the cash surrender value of the policies from banks and pay interest thereon, retaining the insurance, in preference to surrendering it and receiving the same amount. This they would never do unless to them there was a value in excess of the cash value. The investment features must not be overlooked, and payment of the face amount of the policy on the death of the insured is likewise a valuable right. These several rights are sometimes looked upon as a "bundle of rights" and the entire bundle differs in value from a single right. The owner of a life insurance contract is given the right of election as against surrendering the policy and receiving its cash value, or continuing it until the death of the insured. It seems no more logical to say that the cash surrender value is the only measuring rod that can be used for tax purposes than it would be to say that the face amount of the policy, reduced to its present cash value, should be the only yard stick. Each is an option which the owner of the policy may exercise as he wills.

The Commissioner is clothed with authority to make regulations for the en-

---

[3] Sec. 530, 26 U.S.C.A. Int.Rev.Code, § 1029, reads: "The Commissioner, with the approval of the Secretary, shall prescribe and publish all needful rules and regulations for the enforcement of this title [chapter]".

[4] Treasury Regulation 79 (1936 edition, as amended by the Revenue Acts of 1934 and 1935).

"Art. 19. Valuation of Property—General.--The statute provides that if the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift. The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. The value of a particular kind of property is not to be determined by a forced sale price or by an estimate of what a whole block or aggregate would fetch if placed upon the market at one and the same time. Such value is to be determined by ascertaining as a basis the fair market value at the time of the gift of each unit of the property. For example, in the case of shares of stock or bonds, such unit of property is a share or a bond. All relevant facts and elements of value as of the time of the gift should be considered. Depreciation or appreciation in value subsequent to the time of the gift are not relevant factors and will not be considered.
* * *

"(9) Life insurance and annuity contracts.—The value of a life insurance contract or of a contract for the payment of an annuity issued by a company regularly engaged in the selling of contracts of that character is established through the sale of the particular contract by the company, or through the sale by the company of comparable contracts. As valuation through sale of comparable contracts is not readily ascertainable when the gift is of a contract which has been in force for some time and on which further premium payments are to be made, the value may be approximated, unless because of the unusual nature of the contract such approximation is not reasonably close to the full value, by adding to the interpolated terminal reserve at the date of the gift the proportionate part of the gross premium last paid before the date of the gift which covers the period extending beyond that date."

**438**

forcement of the act. He has made a regulation under which the value of a life insurance contract may be established through the sale of the particular contract by the company or the sale by the company of comparable contracts.[4] Perhaps he might have taken the cost to the donor of the particular policy here in controversy, which would have been a higher sum than the figure he used. In using the lower figure by computing the value at an amount which the donor could have purchased the insurance for a single-premium at the age he had attained when the gift was made the Commissioner has not departed from the regulation and has not gone beyond the powers given him by the Revenue Act.

It seems to me the case is ruled by United States v. Ryerson, 312 U.S. 260, 61 S.Ct. 479, 85 L.Ed. 819.[5] It is true in the Ryerson case single-premium policies of insurance were involved. They had been in force, however, fifteen or more years when they were assigned as gifts. The cost of replacing the policies at the then age of the insured was held to be the best available criterion of the value for the purposes of the gift tax. The court said: "We cannot assume with respondents that at the dates of the gifts the policies presumably had no insurance, as distinguished from investment value to the donor. Here, as in the case where the issuance of the policies and their assignment as gifts are simultaneous, cash-surrender value reflects only a part of the value of the contracts. The cost of duplicating the policies at the dates of the gifts is in absence of more cogent evidence the one criterion which reflects both their insurance and investment value to the owner at that time. Cf. Vance on Insurance, 2d Ed., pp. 332, 333; Speer v. Phœnix Mutual Life Insurance Co., 36 Hun [N.Y.] 322".

▮ It seems of no consequence to me whether the insurance is paid for with a single premium or in installments over a period of twenty years. The reasons for refusing to accept cash-surrender value are the same in both instances. The value of property is not to be determined by the methods used in paying for it—after full payment of the price is made. A house, a horse, a hoe is worth no less, no more, whether bought on credit or for cash.

[5] See also the companion cases of Guggenheim v. Rasquin, 312 U.S. 254, 61 S. Ct. 507, 85 L.Ed. 813; Powers v. Commissioner, 312 U.S. 259, 61 S.Ct. 509, 85 L.Ed. 817; and Houston v. Commissioner, 3 Cir., 124 F.2d 518, decided December 16, 1941; Phipps v. Commissioner, 43 B.T.A. 790, decided February 3, 1941.