*Decision will be entered under Rule 50.*

ALFRED D. EDWARDS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102191. Promulgated March 31, 1942.

*John H. Letsinger, Esq.,* and *Metellus Thomson, Jr., Esq.,* for the petitioner.

*Gerald W. Brooks, Esq.,* for the respondent.

818

## OPINION.

Van Fossan: The first and major issue is the correct valuation of the eight annuity contracts which the petitioner transferred by gift to the trustee of the annuity trust on June 11, 1936.

We find no precise or recognized precedent to serve as a guide in determining this issue, but the Commissioner's regulations suggest a rule which in principle is applicable to the facts before us. Article 19 (9) of Regulations 79 [1] provides a method of determining the approximate value of an annuity contract which the purchaser pays for in installments, i. e., adding to the interpolated terminal reserve a proportionate part of the premium paid since the last contract anniversary, the date on which terminal reserve was calculated.

---

[1] Art. 19. *Valuation of property.*—* * *

* * * * * * *

(9) *Life insurance and annuity contracts.*—The value of a life insurance contract or of a contract for the payment of an annuity issued by a company regularly engaged in the selling of contracts of that character is established through the sale of the particular contract by the company; or through the sale by the company of comparable contracts. As valuation through sale of comparable contracts is not readily ascertainable when the gift is of a contract which has been in force for some time and on which further premium payments are to be made, the value may be approximated, unless because of the unusual nature of the contract such approximation is not reasonably close to the full value, by adding to the interpolated terminal reserve at the date of the gift the proportionate part of the gross premium last paid before the date of the gift which covers the period extending beyond that date.

The first sentence of article 19 (9) seems to contemplate the simultaneous acquisition and gift of the contract. In the present case, however, since considerable time elapsed after the contracts in question were acquired, the sale price of the contracts affords no proper test of their value on June 11, 1936. The record clearly shows that the contracts were not comparable to those being sold currently on July 1, 1936, or on June 11, 1936, and that comparable contracts could not have been obtained. The changes in interest rate and loading charge, the enlargement of the contractual rights of the purchaser and the beneficiary, the lapse of time (as contemplated by article 19 (9)) and the numerical increase of guaranteed refund payments were factors of procurable contracts which differentiated them unmistakably from the contracts under consideration.

The facts in the case at bar seem to bring it clearly within the principle underlying the final method outlined in the cited regulation. Here no future payments of premium were to be made, the entire premium or purchase price having been made in one lump sum. Therefore, no correction in amount need be made for installment premiums. The interpolated terminal reserve is based on the company's experience in dealing with similar annuity contracts and certainly is more nearly an index of the true value of the contract than any data which could be submitted from the annuitant's viewpoint.

We are of the opinion that the regulation affords a fair measure of evaluating the contracts and comprehends, in its effect, the various elements of value requisite to the proper determination thereof. The interpolated terminal reserves were found to aggregate $182,653.56, and this sum, therefore, represents the correct valuation of the contracts at the time of gift.

The recent cases of *Guggenheim* v. *Rasquin*, 312 U. S. 254, and *Ryerson* v. *United States*, 312 U. S. 405, cited by both the petitioner and the respondent, do not control the issue before us. In those cases, both involving single premium life insurance policies and not annuities, the Court held that the cash surrender value at the time of the gift did not determine their correct value. In the *Guggenheim* case (in which the gift was made at substantially the same time as the purchase) the value was fixed by the cost of the policies to the donor and in the *Ryerson* case by the cost of similar policies at the time of gift. The Court further stated that "all of the economic benefits of a policy must be taken into consideration in determining its value for gift-tax purposes." Here, as we have seen, the gifts were made a considerable time after the purchase and no comparable contracts were obtainable at the time of gift.

The remaining issue relates to the number of exclusions of $5,000 to which the petitioner was entitled. The petitioner contends that

he may claim an exclusion of $5,000 for each of the donees. This question has been settled by the United States Supreme Court in *Helvering* v. *Hutchings*, 312 U. S. 393, in which it was held that the donor was entitled to an exclusion of $5,000 for each beneficiary, provided the gift is not of a "future interest." It is the contention of the respondent that the gifts here in question were of future interests, particular attention being directed to the fact that the beneficiaries were not entitled to the receipt of income from the trust unless in being on the date appointed for its distribution.

The trust agreement provided that income payments should be made "upon the dates determined by Trustee to be convenient and practicable but at least annually" (if any net income were distributable). There was no provision for accumulations of any sort except as income may be collected, allocated, and distributed during the current year. As a practical matter it would be impossible to distribute each dollar of income as it is received. Taxes and other charges must be paid before net income can be determined. The important provision is that income must be paid within the year. See *Elizabeth H. Fisher*, 45 B. T. A. 958. The trustee was not directed to accumulate income as in *United States* v. *Pelzer*, 312 U. S. 399, but was compelled to distribute it annually. In the *Pelzer* case the beneficiaries had no right to the present enjoyment of either the corpus or the income and would never receive any part of either unless they should survive a ten-year period. See *Commissioner* v. *Taylor*, 122 Fed. (2d) 714; certiorari denied, —— U. S. ——; *Welch* v. *Paine*, 120 Fed. (2d) 141; *Annie B. Smith*, 45 B. T. A. 948. See also *Arthur C. Stifel*, 46 B. T. A. 568, and cases there cited and discussed.

In *Helvering* v. *Blair*, 121 Fed. (2d) 945, the trustee had the absolute discretion to change the amounts to be paid to each beneficiary and thus cause their interests to be so variable that they had no certain, determinable value on the date of gift. Here, the shares of each beneficiary were precisely fixed. There was no possibility of a change in their amount.

We see no merit in the respondent's argument that because the trust instrument prohibited distribution to a beneficiary "unless in being" future interests were created. Obviously, a recipient of income to be earned in the future must exist or he does not receive.

The words "unless in being" do not convert the interests here created into "future interests" and the exclusion of $5,000 for each beneficiary is accordingly allowed.

*Decision will be entered under Rule 50.*