FIDELITY–PHILADELPHIA T R U S T COMPANY and Robert B. Haines, III, Executors of the Will of Mary H. Haines, Deceased,

v.

Francis R. SMITH, Collector of Internal Revenue, Appellant.

No. 12067.

United States Court of Appeals Third Circuit.

Argued Jan. 24, 1957.

Decided Feb. 28, 1957.

Rehearing Denied March 15, 1957.

Morton K. Rothschild, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Hilbert P. Zarky, Attys., Dept. of Justice, Washington, D. C., W. Wilson White, U. S. Atty., Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellant.

Robert T. McCracken, Philadelphia, Pa. (John B. Leake, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., on the brief), for appellees.

Before BIGGS, Chief Judge, and McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The question here is whether a death payment under a contract with a life insurance company is includible in the gross estate of the decedent under Section 811(c) (1) (B) of the Internal Revenue Code of 1939, as amended, 26 U.S.C. 1952 ed. § 811.[1]

---

1. Internal Revenue Code of 1939:
"§ 811. Gross estate
"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—
\* \* \* \* \*
"(c) [As amended by Sec. 7(a), Act of October 25, 1949, c. 720, 63 Stat. 891, 894] Transfers in contemplation of, or taking effect at, death
"(1) General rule.—To the extent of any interest therein of which the decedent has at any time made a transfer

(except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—
\* \* \* \* \*
"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the in·come therefrom; or \* \* \*"

In 1934, decedent, aged seventy-six, purchased three single premium insurance policies on her life. As a condition for the issuance of each policy the insurers required decedent to purchase an annuity in such amount that the sum of the premiums for death payment and annuity would equal approximately 11/10ths of the face amount of the death payment. In the policies decedent's four children were named primary beneficiaries and the Fidelity-Philadelphia Trust Co. (as trustee under a trust agreement) contingent beneficiary of the share of any of the decedent's children who predeceased her. In 1935, decedent reported on a gift tax return the interests transferred and paid the gift taxes thereon. By July 6, 1938, decedent had assigned irrevocably and unalterably to the beneficiaries all her rights in all death payments.[2] Until the date of death, decedent retained the annuity interests.

Decedent died May 7, 1946. In the estate tax return filed August 6, 1947, the death payments under the above contracts were not included in the gross estate. The Commissioner, under Sec. 811(c) (1) (B), assessed and collected a deficiency resulting from an audit which included those payments. After a claim for refund was disallowed, this suit was brought in the district court. The estate prevailed below and the government appealed.

Helvering v. Le Gierse, 1941, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996, removed the "life insurance" label from transactions such as these and directed that they be treated as investments. Goldstone v. United States, 1945, 325 U.S. 687, 65 S.Ct. 1323, 89 L.Ed. 1871, held the death payment in this type of trans-

---

2. As to the assignments of the three policies the findings are as follows:

"21. Pursuant to decedent's written application for the policies, each of the two life policies issued by The Mutual Life Insurance Company of New York contained at and after issue the following provision:

"RIGHTS: Anything in this policy to the contrary notwithstanding, prior to the maturity of this policy, the Insured's children Isabella H. Miller, Margaret W. Haines, Robert B. Haines and Charles H. Haines jointly, the survivors or survivor, if none of said children be living, then the living children of said children of the Insured, jointly or the survivors or survivor, if none of the children of said children of the Insured be living, then to the executors or administrators of the last survivor of said children of the Insured and the children of said children of the Insured, some of the beneficiaries may, without the consent and to the exclusion of the Insured or any other beneficiary, receive, exercise, and enjoy every benefit, option, right and privilege conferred by this policy or allowed by the Company.

"22. The decedent's four children were named as beneficiaries of the life insurance policy issued by John Hancock Mutual Life Insurance Company in which no right to change beneficiaries was reserved to the decedent. The policy, as issued, provided for the payment of the proceeds to the decedent's executors or administrators if her four children predeceased her. The decedent assigned this life policy to Fidelity-Philadelphia Trust Company, trustee, under a trust agreement between her and that company, and then nominated that company as trustee to be contingent beneficiary of this life policy, and on November 22, 1934 the policy was amended so to provide.

"23. Under the trust agreement decedent had reserved to herself all benefits, privileges and options available to her under the life insurance policy issued by John Hancock Mutual Life Insurance Company including rights of dividend receipt, assignment and surrender and had also reserved the right to change, amend or revoke the trust agreement. On July 6, 1938 the decedent amended the trust agreement by assigning, irrevocably to the the trustee for trust purposes all her right, title and interest in this and any other policy subject to the trust agreement and by irrevocably empowering the trustee to exercise and enjoy all options, benefits, rights and privileges under this and any other policy subject to the trust agreement. By the same amendment the decedent further provided that the trust agreement as so amended was thereafter unalterable and irrevocable. Neither decedent nor her estate had any beneficial or reversionary interest in the trust she created nor any reversionary interest in the life insurance policy issued by John Hancock Mutual Life Insurance Company after July 6, 1938."

action includible in the gross estate. Since then in United States v. Tonkin, 3 Cir., 1945, 150 F.2d 531, certiorari denied 326 U.S. 771, 66 S.Ct. 176, 90 L.Ed. 466, we held a similar death payment includible. The present situation is allegedly beyond the reach of those authorities as a result of the assignment of all the decedent's rights except the annuity to the trustee. That precise issue has been decided for the government in Reynolds v. Commissioner, 1941, 45 B.T.A. 44; Burr v. Commissioner, 2 Cir., 1946, 156 F.2d 871, certiorari denied 329 U.S. 785, 67 S.Ct. 298, 91 L.Ed. 673; Conway v. Glenn, 6 Cir., 1952, 193 F.2d 965. The Court of Appeals for the Seventh Circuit did reach the opposite result in Bohnen v. Harrison, 7 Cir., 1952, 199 F.2d 492, Judge Duffy dissenting, affirmed by an equally divided court, 345 U.S. 946, 73 S.Ct. 863, 97 L.Ed. 1371, rehearing denied 345 U.S. 978, 73 S.Ct. 1120, 97 L.Ed. 1392. However, in a later opinion, Greene v. United States, 7 Cir., 1956, 237 F.2d 848, 852, that court, construing the same section, 811(c) (1) (B), squarely conceded that "The decisive issue is whether, looking to substance and not merely to form, the decedent had retained for her life the right to the income from the property transferred."

The district court in following the Bohnen case misconstrues the Goldstone opinion. In the latter the Court included the death payment in the gross estate on the ground that the decedent retained a contingent reversionary interest under Helvering v. Hallock, 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, and found it unnecessary to reach the question whether the retention of the life annuity interest involved required its inclusion. There is nothing in Goldstone to support taxpayers' position.

It is urged that the annuity interests are completely separate and independent of the death payments and therefore cannot be encompassed by the following language of Sec. 811(c) (1) (B)—" * * * retained for his life * * *

the right to the income from, the property * * * ". To demonstrate this independence taxpayers point to the fact that the annuity interests could be purchased by any one the age of the decedent for the same premium independent of the death payment. The illustration fails completely to show the independence of the death payment from the income payments for admittedly the death payment could not be bought without the income payments and it is the death payment which is sought to be included in the estate.

The argument itself exalts form over substance in an arrangement where the Supreme Court has specifically directed that the form be ignored. Helvering v. Le Gierse, supra. The substance of the matter is that a capital fund—the premium—was deposited with the insurance company for a guaranteed annual return and repayment of the residue to beneficiaries on the death of the depositor. But for the insurance company's guarantee of the payments, it is identical to a transfer in trust with the settlor taking back a beneficial life interest. The assignments of all rights to the beneficiaries do not change the result. In the first place it does not appear that the beneficiaries received anything substantial since they were all contingent beneficiaries and survivorship was unknowable until the death of the decedent. While, theoretically, there may have been a possibility of anticipating the death payment by a cash surrender, the anticipators could do nothing with the cash until the survivorship status was determined. A bare possibility of cash surrender does not change the inherently testamentary nature of this procedure. If a surrender is effected, a different problem is presented. Cf. Hutchinson's Estate v. Commissioner, 1953, 20 T.C. 749. Here the plain purpose was to convey the capital sum to the natural objects of the decedent's bounty in testamentary style and retain a life interest in the transferor. The small matter of the cash surrender right is well disposed

of In Bank of New York v. Kelly, 1944, 135 N.J.Eq. 418, 38 A.2d 899, 902, as follows:

"In view of the conservative reason for the investment, it seems fantastic to suppose that a cancellation of the policy by Mrs. Parish during the lifetime of the insured at its surrender value was regarded by either as probable. If the decedent had intended to make a complete, absolute, and immediately effective gift, why would he resolve to invest a material portion of his estate in such manner that an enjoyment of it by the donee before his death would necessitate the loss incident to the surrender of the policy? Guggenheim v. Rasquin, 312 U.S. 254, 257, 61 S.Ct. 507, 85 L.Ed. 813. Cash or securities could well have been deposited in the trust instead of a single premium life insurance policy payable upon the event of death and having a surrender value based on a mortality table."

The district court was greatly impressed with the conclusion that the decedent had no ownership rights in the death payment after the assignments. In a sense, a life tenant has no ownership right in the remainder. But possession of legal title to the life policy after the assignment is not controlling. All of Section 811(c) is plainly directed at inter vivos transfers where title is no longer in the decedent at death. Taxation is a practical matter and the shifting of the economic benefits of the investment occasioned by the death of the decedent is too much akin to a testamentary disposition not to be subjected to the same tax under Sec. 811(c) (1) (B). See Helvering v. Bullard, 1938, 303 U.S. 297, 58 S.Ct. 565, 82 L.Ed. 852.

The judgment of the district court will be reversed and the case remanded with the direction that judgment be entered in favor of the defendant (appellant in this court).