**John R. TUTTLE and Louise B. Tuttle, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 68-CV-108.**

United States District Court
N. D. New York.

April 16, 1969.

Caleb Candee Brown, Jr., Syracuse, N. Y., for plaintiffs.

James M. Sullivan, Jr., U. S. Atty., Syracuse, N. Y., for defendant; Mitchell Rogovin, Asst. Atty. Gen., Donald R. Anderson, Stephen T. Lyons, Department of Justice, Washington, D. C., of counsel.

PORT, District Judge.

*Memorandum-Decision and Order*

This case, seeking the refund of an alleged overpayment of income taxes, is before the court for judgment on a stipulation of facts. A previous motion by the plaintiff for judgment on the pleadings was denied, with the suggestion that the matter be resubmitted on an agreed state of facts, which has now been done.

The facts, as disclosed by the pleadings and stipulation, are briefly as follows:

On May 28, 1952, Forbes S. Tuttle, the plaintiffs' son, took out a Massachusetts Mutual Life Insurance Company policy on his own life, in the face amount of $50,000. This policy became a "paid-up policy" prior to August 15, 1963, when he donated it to Saint Ann's Church, Syracuse, New York.

On September 4, 1963, the plaintiffs purchased the policy from Saint Ann's Church for $1,000, and on April 13, 1964, they donated it to the Community Foun-

dation of Syracuse and Onondaga Co., Inc.[1] The Community Foundation, in turn, surrendered the policy to the insurance company on April 28, 1964, for its cash surrender value.

The cash surrender value,[2] the replacement value,[3] and the value of the policy on maturity as a death claim on the various dates mentioned, as stipulated, are set forth below.[4]

The plaintiffs in their 1964 income tax return, claimed a deduction in the amount of $4000.67 [5] as a charitable deduction. This deduction was reduced by the Internal Revenue Service to $283.60, the cash surrender value at the time of the gift, resulting in an asserted tax deficiency of $2,081.56, plus interest, which the plaintiffs paid. A timely claim for a refund having been disallowed, the plaintiffs brought this suit for a refund of the amount allegedly illegally and erroneously collected.

It has been stipulated that "(t)he sole question for determination by this Court is the proper amount of charitable deduction to which the plaintiffs are entitled as a result of their contribution of the aforementioned insurance policy to the Community Foundation of Syracuse and Onondaga County, Inc." Stipulation of Fact #18.

The plaintiffs contend that the correct deduction is the sum of $4,000.67, which was the replacement value and the amount claimed by them on their tax returns. The defendant asserts that the proper deduction is $283.60, which was the cash surrender value and the amount allowed by the Internal Revenue Service, or, in the alternative, $771.53, which was the cash surrender value received by the foundation upon its surrender of the policy to the insurance company.

Citing three Supreme Court decisions [6] and a Treasury Regulation [7] in support

1. Gifts to Saint Ann's Church and the Community Foundation of Syracuse and Onondaga Co., Inc., are deductible as charitable contributions under Section 170 of the Internal Revenue Code of 1954 (26 U.S.C. § 170).

2. The term "cash surrender value" is stipulated to be "the amount of money which the insurance company would pay to the owner of an insurance policy if the latter turned in his policy to the insurance company." Stipulation of Fact #6.

3. The term "replacement value" is stipulated to be "the amount which the insurance company would charge for a single premium contract in the same specified amount on the life of a person of the age of the insured." Stipulation of Fact #5.

4.

| DATE | FACE VALUES & ADDITIONS | LOAN & INTEREST OUTSTANDING | NET DEATH BENEFITS | REPLACEMENT VALUE* | CASH SURRENDER VALUE |
|---|---|---|---|---|---|
| 8/15/63 | $56,654.00 | $34,814.27 | $21,839.73 | $4,314.95 | $920.24 |
| 9/4/63 | 56,654.00 | 34,906.14 | 21,747.86 | 4,223.08 | 892.39 |
| 4/13/64 | 56,654.00 | 35,964.76 | 20,589.24 | 4,000.67 | 283.60 |
| 4/28/64 | 57,428.00 | 36,037.14 | 21,390.86 | | 771.53 |

* From the figures stipulated and the briefs, it is apparent that replacement value in this case is determined by the replacement cost of a policy in the face amount of $50,000, plus the amount of paid-up additional insurance, less the existing loans and interest assessed against the policy, as of a particular date.

5. The stipulated replacement value. See footnote #4, *supra*.

6. Plaintiffs cite: Guggenheim v. Rasquin, 312 U.S. 254, 61 S.Ct. 507, 85 L.Ed. 813 (1941); Powers v. Commissioner of Internal Revenue, 312 U.S. 259, 61 S.Ct. 509, 85 L.Ed. 817 (1941); United States v. Ryerson, 312 U.S. 260 (1941).

7. Treasury Regulations on Gift Tax: Sec. 25.2512–6. *Valuation of certain life insurance and annuity contracts; valuation of shares in an open-end investment company.*

(a) *Valuation of Certain Life Insurance and Annuity Contracts.* The value of a life insurance contract or of a contract

of their position, the plaintiffs profess to see a simple black-and-white situation compelling, to the exclusion of all other factors, the acceptance of replacement value as the proper measure of valuation of a gift of a paid-up insurance policy.

The defendant concedes that "(t)he published position of the Internal Revenue Service is consistent with the *general* rule that the proper value of an insurance policy donated to charity is its replacement cost." Defendant's Brief at p. 8. Defendant contends, however, that because of the factual situation in this case, such a valuation would be inappropriate. The defendant's contention, briefly and in substance, is that replacement value should not be used in this case because such value is only used where the assumption is made that a market for, and the market valuation of an insurance policy are non-existent, and, consequently, the usual measure of fair market value [8] cannot be applied.

■■ In this case, however, the defendant asserts that the cash surrender value was established as the market value by reason of: Forbes' and the plaintiffs' gifts, the purchase of the policy by the plaintiffs, and the surrender of the

policy by the Community Foundation for its cash surrender value. These circumstances, the defendant also claims, supply the "more cogent evidence" [9] needed to avoid the general rule.

I cannot accept the defendant's reasoning, and I find that the above-mentioned facts neither created a market nor established a fair market value.

The defendant obviously does not claim that the $1,000 purchase price from Saint Ann's Church represents the fair market value, since neither the Internal Revenue Service on the audit, nor the defendant in this litigation has made such an assertion.

The defendant further contends that an exception to the general rule needs to be carved-out in this case, in order not to "exalt artifice above reality and to deprive the statutory provision in question of all serious purpose." Gregory v. Helvering, 293 U.S. 465, 470, 55 S.Ct. 266, 268, 79 L.Ed. 596 (1935). Otherwise, defendant asserts, "for a cost of $1000.00 the plaintiffs have 'bought' a $4000.67 income tax deduction and the charitable donee ends up with $771.53." Defendant's Letter to the Court, dated August 26, 1969 at p. 2.

---

for the payment of an annuity issued by a company regularly engaged in the selling of contracts of that character is established through the sale of the particular contract by the company, or through the sale by the company of comparable contracts. * * *

    *    *    *    *    *    *

Example (3). A donor owning a life insurance policy on which no further payments are to be made to the company (e. g., a single premium policy or paid-up policy) makes a gift of the contract. The value of the gift is the amount which the company would charge for a single premium contract of the same specified amount on the life of a person of the age of the insured.

    *    *    *    *    *    *

(26 C.F.R. § 25.2512–6.)

8. Treasury Regulations on Income Tax (1954 Code):
Sec. 1.170–1. *Charitable, etc., contributions and gifts; allowance of deduction.*
    *    *    *    *    *    *

(c) *Contribution in Property.*—(1) *General Rules.*—If a contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts.
    *    *    *

    *    *    *    *    *    *

(26 C.F.R. § 1.170–1.)

9. United States v. Ryerson, 312 U.S. 260 at page 261, 61 S.Ct. 479, at page 479, 480, 85 L.Ed. 819 (1941) states:
The cost of duplicating the policies at the dates of the gifts is, in absence of more cogent evidence, the one criterion which reflects both their insurance and investment value to the owner at that time.

The above-quoted portion from *Gregory v. Helvering, supra*, is not applicable to the claimed deduction in this case. *Gregory's* claim would not have been disallowed "if a reorganization in reality was effected (despite his) ulterior purpose (tax-avoidance or tax-saving) * * *. The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted." Gregory v. Helvering, supra at 469, 55 S.Ct. at 267 (citations omitted).

The plaintiffs' gift was absolute and unquestioned. That they bought the subject of the deduction at bargain-basement rates, does not invalidate it or change the criteria for establishing its value. If the subject of the charitable contribution were in the form of a painting, a rare coin or letter, or any other of the myriad objects which are given to charitable organizations, the fact that the doner had bought it the day before making the contribution, and at a small fraction of its market value, would not change the amount deductible. The various tax services point out such opportunities in large numbers.

That the Community Foundation "end(ed) up with $771.53" by sacrificing the other potential values of the policy, for the ready cash surrender value, does not establish the policy's value at the time the gift was made.

This decision, together with the stipulations of fact,[10] all of which were considered and are hereby adopted as findings of fact, shall constitute the findings of fact and conclusions of law in accordance with F.R.Civ.P. Rule 52(a).

For the reasons herein, it is

Ordered, that judgment be granted in favor of the plaintiffs John R. and Louise B. Tuttle, against the defendant United States of America, in the sum of $2,081.56 together with the lawful interest thereon, plus the costs and disbursements of this action.

## APPENDIX
### STIPULATION OF FACTS

The parties through undersigned attorneys hereby stipulate and agree that the following statements shall be accepted as true facts for the purposes of the above-styled action only, subject to the right of either party to object to the relevancy or materiality of any of the statements; that such statements include all the facts which it is necessary or proper for the Court to consider in the decision of the issues herein:

1. The plaintiffs in this action are husband and wife citizens of the United States, and residents of Syracuse, Onondaga County, New York.

2. Forbes S. Tuttle is the son of the plaintiffs and at all times relevant to this action was the general agent for Massachusetts Mutual Life Insurance Company in Syracuse, New York.

3. On May 28, 1952, Forbes S. Tuttle took out an insurance policy (Massachusetts Mutual Life Insurance Company Policy No. 2 209 060) on his own life with a face value of $50,000; that all premiums ever to be payable with respect to such policy were paid prior to August 15, 1963 and that it had become a "paid-up policy."

4. On August 15, 1963, the aforementioned insurance policy was donated by Forbes S. Tuttle to Saint Ann's Church, Syracuse, New York. As of August 15, 1963, the insurance policy had a replacement value of $4,314.95, and had a cash surrender value of $920.-24. Had the insured died on this date, the policy would have matured as a death claim and the insurance company would have paid to the owner of the policy the face amount thereof ($50,000) plus paid up additions ($6654) less the outstanding loan and interest ($34,814.27) or a total of $21,839.73.

5. The term replacement value in the insurance field and in the context of this litigation means the amount which the

---

10. The Stipulation of Facts agreed to by the parties herein, is attached to this decision in the Appendix.

insurance company would charge for a single premium contract in the same specified amount on the life of a person of the age of the insured.

6. The term cash surrender value in the insurance field and in the context of this litigation is the amount of money which the insurance company would pay to the owner of an insurance policy if the latter turned in his policy to the insurance company.

7. On September 4, 1963, the plaintiffs purchased the aforementioned insurance policy for $1,000 from Saint Ann's Church.

8. On September 4, 1963, the insurance policy had a replacement value of $4,223.08, and had a cash surrender value of $892.39. Had the insured died on this date, the policy would have matured as a death claim and the insurance company would have paid to the owner of the policy the face amount thereof ($50,000) plus paid up additions ($6654) less the outstanding loan and interest ($34,-906.14) or a total of $21,747.86.

9. On April 13, 1964, the plaintiffs contributed the aforementioned policy to the Community Foundation of Syracuse and Onondaga County, Inc.

10. On April 13, 1964, the insurance policy had a replacement value of $4,-000.67, and had a cash surrender value of $283.60. Had the insured died on this date, the policy would have matured as a death claim and the insurance company would have paid to the owner of the policy the face amount thereof ($50,000) plus paid up additions ($6654) less the outstanding loan and interest ($35,964.-76) or a total of $20,589.24.

11. On April 28, 1964, the Community Foundation of Syracuse and Onondaga County, Inc., surrendered the aforementioned insurance policy to the insurance company for its cash surrender value, and received in return therefore the sum of $771.53. Had the insured died on this date, the policy would have matured as a death claim and the insurance company would have paid to the owner of the policy the face amount thereof ($50,000) plus paid up additions ($7428) less the outstanding loan and interest ($36,037.14) or a total of $21,390.86.

12. Saint Ann's Church and the Community Foundation of Syracuse and Onondaga County, Inc., are organizations exempt from income tax under the provisions of Section 501 of the Internal Revenue Code of 1954 and the contributions of money or property to which are deductible under Section 170 of the Internal Revenue Code of 1954.

13. The plaintiffs filed a timely income tax return for the calendar year 1964, in which they claimed a deduction in the amount of $4,000.67 as a charitable contribution to the Community Foundation of Syracuse and Onondaga County, Inc.

14. Upon audit of the return by the Internal Revenue Service, the claimed charitable deduction was decreased to the amount of $283.60.

15. As a result of the aforementioned adjustment, a tax deficiency in the amount of $2,081.56, plus interest, was asserted against and paid by the plaintiffs.

16. A timely claim for refund (Form 843) was filed, which claim was disallowed by certified notice of disallowance dated April 23, 1968.

17. The Court has jurisdiction of the subject matter and the parties to this action.

18. The sole question for determination by this Court is the proper amount of charitable deduction to which the plaintiffs are entitled as a result of their contribution of the aforementioned insurance policy to the Community Foundation of Syracuse and Onondaga County, Inc.

19. The parties hereby stipulate that the Court may determine the issues and render judgment herein based upon the Complaint, the Answer, and such of the foregoing facts as are deemed by the Court to be relevant.