Bertha O. HOWELL, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 17313.

United States Court of Appeals
Seventh Circuit.

July 11, 1969.

Bruce R. Bancroft, John L. Carey, South Bend, Ind., for appellant.

Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., Gilbert E. Andrews, Tax Division, Department of Justice, Washington, D. C., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, David English Carmack, Attys., Department of Justice, Washington, D. C., for appellee.

Before SWYGERT and KERNER, Circuit Judges, and WISE, District Judge.[1]

SWYGERT, Circuit Judge.

■ The narrow issue presented by this case is whether a gift of shares of an open-end investment company (mutual fund) was properly valued for federal gift tax purposes by the district court on the basis of the public offering price, that is, what it would cost a willing buyer to purchase the shares on the date of gift or whether, as the taxpayer contends, the proper valuation is the bid price that an owner of the shares would have received upon redemption by the issuer. Essentially, the difference between the suggested alternative valuation figures is the loading or sales charge that goes to the underwriters who act as agents for the investment company in marketing its shares.

This case was commenced under the authority of 28 U.S.C. § 1346(a) as an action for refund of federal gift taxes in the amount of $2,092.98 plus interest. The district court heard the case on a stipulation of facts and rendered a decision favorable to the Government. It is an appeal from that decision which is before us.

The appellant, Bertha O. Howell (taxpayer), made a gift of 5,085 shares of stock in Massachusetts Investors Trust (M.I.T.) in 1964. In her gift tax return filed by the taxpayer in 1965, she reported this gift at a value of $16.70 per share. This figure represented the net asset value or bid price of these shares. A gift tax of $7,633.10 was paid with the filing of the return. The Commissioner of Internal Revenue assessed a gift tax deficiency of $2,092.98 plus interest after determining that the taxpayer had incorrectly valued the shares. The Commissioner asserted that the M.I.T. shares should have been valued at $18.66 each, the asked or public offering price of the shares on the date of the gift. The taxpayer paid the assessed deficiency and filed a claim for refund which was denied by the Commissioner on May 4, 1967.

M.I.T. is an open-end investment company registered with the Securities and Exchange Commission and regulated by the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 to 80b–21. M.I.T. may issue as many shares in itself as it can market and there is no restriction on the

1. Judge Wise is sitting by designation from the Eastern District of Illinois.

transferability of these shares. Because the shares are not sold in the national securities markets, M.I.T. is the market for its own shares, both as buyer and seller. With the proceeds from the sale of its shares, M.I.T. engages in the business of investing, reinvesting, and trading in securities of various types. As a result of their ownership of M.I.T.'s shares, investors may obtain the group judgment of a professional management organization in selecting common stock investments.

The price at which shares in M.I.T. are sold to an investor is prescribed by section 22(d) of the Investment Company Act of 1940, 15 U.S.C. § 80a–22. The current public offering price or asked price as described in the prospectus furnished to each purchaser is determined by adding together the net asset value of a share and a loading charge. The net asset value of a share is computed by ascertaining the market value of all securities and other assets owned by the trust and subtracting therefrom all liabilities of the trust and dividing that figure by the then total outstanding shares. The loading charge, or load, represents the selling expense incurred in selling shares in the fund. The load is not, however, used to pay professional fees incurred in managing M.I.T.

Although there is no restriction on their transferability, shares in M.I.T. are ordinarily disposed of by redemption. The issuer, M.I.T., is required by section 22(a) (1) of the Investment Company Act of 1940, 15 U.S.C. § 80a–22, to redeem outstanding shares in itself at the current net asset value.

The valuation controversy presented by this case arises from the fact that at a particular point in time the cost of acquiring an additional share is determined by the public offering price, whereas, the proceeds that may be realized from the disposition of a share equals its net asset value. The existence of the seven per cent to nine percent loading charge or broker's fee means that a significant disparity exists between what it would cost a donor to replace a share and what he could realize from redemption of the share.

Upon these facts, the district court held that the valuation of shares of M.I.T. for gift tax purposes was the public offering price on the date of the gift and that section 25.2512–6(b) of the Treasury Regulations which provides this method of valuation for shares in open-end investment companies was in harmony with and a reasonable interpretation of the gift tax statute.[2].

The statutory framework which underlies the federal gift tax scheme is straightforward. Section 2501 of the Internal Revenue Code, 26 U.S.C. § 2501, imposes a tax on the transfer of property by gift. Section 2512(a) provides that: "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." The Treasury Regulation pertaining to shares in open-end investment companies, Treas.Reg. § 25.2512–6(b) (1968), unequivocally provides that the fair market value of a share is the public offering price of a share, adjusted for any reduction in price available to the public in acquiring the number of shares being valued. The taxpayer contends that this regulation misapplies the general valuation rule stated in Treas. Reg. § 25.2512–1 (1968) which provides that: "The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, and both

2. Treas.Reg. § 25.2512–6(b) (1968) provides:
(b) *Valuation of shares in an open-end investment Company.*
(1) The fair market value of a share in an open-end investment company (commonly known as a "mutual fund") is the public offering price of a share, adjusted for any reduction in price available to the public in acquiring the number of shares included in the particular gift.
* * * * *
(2) The provisions of this paragraph shall apply with respect to gifts made after October 10, 1963.

having reasonable knowledge of relevant facts."

In reviewing the challenged regulation, if the court finds it to be reasonable and consistent with the statute, the regulation must be sustained. Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1948). Even more central to deciding the question presented is the rule that where there is a possibility that several methods of valuation are permissible, any permissible one chosen by the Commissioner may not be set aside. DuPont's Estate v. Commissioner of Internal Revenue, 233 F.2d 210 (3d Cir.), cert. denied, 352 U.S. 878, 77 S.Ct. 100, 1 L.Ed.2d 79 (1956); Mearkle's Estate v. Commissioner of Internal Revenue, 129 F.2d 386 (3d Cir.1942). The Supreme Court has recently defined the judicial function with respect to administrative construction of the tax statutes:

But we do not sit as a committee of revision to perfect the administration of the tax laws. Congress has delegated to the Commissioner, not to the courts, the task of prescribing "all needful rules and regulations for the enforcement" of the Internal Revenue Code. 26 U.S.C. § 7805(a). In this area of limitless factual variations, "it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments." Commissioner of Internal Revenue v. Stidger, 386 U.S. 287, 296, [87 S.Ct. 1065, 1071, 18 L.Ed.2d 53]. The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner. United States v. Correll, 389 U.S. 299, 306–307, 88 S.Ct. 445, 449, 19 L.Ed.2d 537 (1967).

The taxpayer's first contention is that application of the willing buyer-willing seller standard requires that the net asset value be selected as the proper valuation figure and that the district court's decision is erroneous in light of its application of the Treasury Regulation's public offering price standard. The taxpayer argues that proper application of the willing buyer-willing seller test requires placing the taxpayer in the role of "willing seller" and the issuer in the position of "willing buyer". The Government argues that this test is inapplicable for two reasons. First, it maintains that the investment company is under a statutory duty to redeem all shares tendered and it is not in the position of a willing buyer. Second, it argues that difficulties arise in translating the ideal standard of willing buyer and seller into the context of open-end mutual shares because there is a substantial difference between the price at which shares can be purchased from the issuer and the price at which they will be redeemed by the issuer. We must keep in mind that the Code is attempting to ascertain the value of the donated property in the donor's hands at the moment of the gift. It is our opinion that, because from the donor's standpoint his mutual fund shares are not assets that can be readily sold on an open market, valuing the shares on the basis of their redemption price is not warranted.

Hence, we are faced with the question whether the valuation formula chosen by the applicable Treasury Regulation, that of replacement cost or public offering price, is proper. The district court relied upon the case of Guggenheim v. Rasquin, 312 U.S. 254, 61 S.Ct. 507, 85 L.Ed. 813 (1941), to support its position that replacement cost is a reasonable index of value in a situation where it is impossible to match a willing buyer and willing seller. Although we agree with the taxpayer that Guggenheim v. Rasquin sets forth as a criterion of value that figure which properly measures the value to the owner of the donated property, we are unable to concur in her conclusion that the district court's decision misapplied the *Guggenheim* holding. In *Guggenheim*, the Court was called upon to decide the proper method of determining the value of a single-premium life insurance poli-

cy. Such a life insurance policy is not marketable, but the owner can liquidate the policy for its cash surrender or liquidation value. On the date of purchase and for a period thereafter, the liquidation value of the policy is lower than its replacement cost because liquidation destroys the investment and insurance features of the policy. In that case, the taxpayer claimed the value for gift tax purposes must be limited to the liquidation value of the policy. The Court disagreed and upheld a valuation based on replacement cost. Although we recognize differences between single-premium life insurance policies and shares of an open-end investment company, we view *Guggenheim* as supporting the Commissioner's position that the valuation of shares in light of their public offering or replacement price is permissible.

The taxpayer urges us for purposes of gift tax valuation to view the mutual fund shares in the same light as stocks listed on a national exchange. Listed stocks are valued at the mean between the highest and lowest quotation on the date of gift pursuant to Treas.Reg. § 25.2512–2(b) (1968). Commissions paid to brokers on stocks purchased or sold are not included in their valuation. We are not persuaded by the suggested analogy because the bid and ask prices for listed securities are identical and, hence, the willing seller and willing buyer standard can be applied. Further, the taxpayer's contention that brokers' commissions should be excluded for valuation purposes in light of the treatment accorded to listed stocks is erroneous. The rationale of cases such as Duke v. Commissioner of Internal Revenue, 200 F.2d 82 (2d Cir. 1952), cert. denied, 345 U.S. 906, 73 S.Ct. 645, 97 L.Ed. 1342 (1953), holding that federal excise taxes should be included in valuing gifts such as jewelry applies equally here where the price at which the public may obtain shares of M.I.T. includes a sales commission.

The validity of Treas.Reg. § 25.-2513–6(b) (1968) is questioned because

it provides for a valuation adjustment reflecting the reduction in price available to the purchaser of large blocks of shares that is said to be unfair, unreasonable and the source of a tax advantage to the large donor. The taxpayer suggests that the result is inconsistent with the fair market value standard that requires that each unit of property must be valued separately when several units are given in the aggregate. Treas.Reg. § 25.2513–1 (1968). But this regulation further provides that all relevant facts must be considered in the determination of the value of a gift. The economic reality of quantity discounts has been recognized by this court in the "blockage" situation where a reduction in the price obtainable for units of property when large amounts are made available for sale occurs. Commissioner of Internal Revenue v. Shattuck, 97 F.2d 790 (7th Cir.1938). We do not view the regulation's treatment of the discount as inconsistent with the unit rule.

The decision of this court upholding the district court's determination that valuation of shares of an open-end investment company consistent with Treas.Reg. § 25.2512–6(b) (1968) is permissible coincides with the Tax Court's decision in Estate of Wells v. Commissioner, 50 T.C. 871 (Sept. 16, 1968), which decided an identical valuation problem in an estate tax context. In Estate of Wells, the Tax Court (six judges dissenting) upheld the validity of Treas.Reg. § 20.2031–8(b) (1968) which prescribed the same valuation method as Treas.Reg. § 25.2512–6(b). It has been observed that the estate and gift tax laws should be construed *in pari materia* in absence of a clear expression of Congressional intent to the contrary. Merrill v. Fahs, 324 U.S. 308, 311–313, 65 S.Ct. 655, 89 L.Ed. 963 (1945). Our decision here comports with that rule of construction.

The decision of the district court is affirmed.